### In re Daniel E. MOSER and Jennifer L. Moser, Debtors.

#### No. 99–32657.

United States Bankruptcy Court, N.D. Ohio.

March 9, 2000.

Bonford R. Talbert, Jr., Tiffin, OH, for debtors.

Anthony B. DiSalle, Toledo, OH, trustee.

## DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Motion by the Debtors, Daniel E. Moser and Jennifer L. Moser, to determine the secured status of a claim submitted by the Beneficial Mortgage Company of Ohio (hereinafter referred to as Beneficial) in the Debtors' above-captioned Chapter 13 case. The particular relief which the Debtors seek is a downward modification in the amount of the secured claim held by Beneficial against the Debtors' principal place of residence. Specifically, the Debtors seek to reduce, for purposes of their Chapter 13 plan, Beneficial's secured claim from Seventy-four Thousand Dollars ($74,-000.00) to Forty-nine Thousand Three Hundred Dollars ($49,300.00). The legal ground upon which the Debtors rely for modifying Beneficial's secured claim, although not specifically stated in the Debtors' Motion, is § 506(a) of the Bankruptcy Code which permits bifurcation of a claim into its secured and unsecured components for purposes of determining the allowance of a creditor's claim. In support of bifurcating Beneficial's claim, the Debtors have presented evidence that Beneficial's secured claim exceeds the appraised value of the Debtors' residence by Twenty-four Thousand Seven Hundred Dollars ($24,-700.00). Beneficial, who holds a first Mortgage against the Debtors' residence, has objected to the Debtors' Motion, and thus by implication, confirmation of the Debtors' Chapter 13 Plan, on the grounds that to modify Beneficial's secured claim would be contrary to the anti-modification of § 1322(b)(2) of the United States Bankruptcy Code, and the United States Supreme Court's interpretation of this statutory provision in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

On January 10, 2000, a hearing was held on the matter at which time the Parties were afforded the opportunity to present arguments in support of their respective positions. In addition, each of the Parties has submitted Memorandum to the Court detailing their particular legal arguments. After carefully considering the arguments presented by the Parties, the Court finds, based upon the following analysis, that Beneficial's secured claim against the Debtors is not subject to modification in the Debtors' Chapter 13 Plan, and thus Beneficial's objection is Sustained.

## LEGAL ANALYSIS

Section 1322(b)(2) of the Bankruptcy Code provides:

Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

In addition, section 506(a) of the Bankruptcy Code provides, in pertinent part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

In *Nobelman v. American Savings Bank*, the United States Supreme Court interpreted the interplay between these two Code sections and held that § 1322(b)(2) prohibits a Chapter 13 debtor from relying

on § 506(a) to reduce, for purposes of confirming a Chapter 13 Plan, an undersecured homestead mortgage to the appraised value of the mortgaged residence. 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). According to the Supreme Court, to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 Plan would require modifying the rights of the holder of the security interest in a debtor's principal residence in contravention to the prohibition against such a modification contained in the anti-modification clause of § 1322(b)(2). *Id.* at 332, 113 S.Ct. at 2111.

The Debtors, however, argue that bifurcation is permitted in the instant case, notwithstanding the holding of *Nobelman,* because the loan made by Beneficial is actually a consolidation loan and consists of several obligations which were combined by Beneficial using the Debtors' residence as security. In other words, the Debtors assert that the anti-modification clause of § 1322(b)(2), and the Supreme Court's holding in *Nobelman,* is limited to the situation where the mortgage made on the debtor's residence was used to enable the debtor to purchase the property. In support of this position, the Debtors have cited to the following cases: *Hammond v. Commonwealth Mortgage Co. of America (In re Hammond),* 156 B.R. 943 (E.D.Pa. 1993); *Laws v. New York Guardian (In re Laws),* 163 B.R. 449 (E.D.Pa.1994); *In re Caster,* 77 B.R. 8 (Bankr.E.D.Pa.1987); *Oglesby v. Associates Nat'l Mortgage Co. (In re Oglesby),* 150 B.R. 620 (Bankr. E.D.Pa.1993); *Hirsch v. Citicorp. Mortgage Corp. (In re Hirsch),* 155 B.R. 688 (Bankr.E.D.Pa.1993); *In re Brown,* 1993 WL 544385 (Bankr.E.D.N.C.1993). However, after conducting a close examination of these cases, the Court finds that the holdings contained therein are not germane to the instant case as these cases do not specifically address the situation where the security interest taken against the property was not used exclusively for the purchase price of the house. Instead, the cases cited by the Debtors either involve a situation where additional security was given on a home mortgage (i.e., the security interest is in the residence and in other collateral such as fixtures, household appliances, hazard insurance, rents, profits, and proceeds), or involve the type of situation where the claim of the creditor was completely undersecured.

Nevertheless, in conformity with the Debtors' premise, a review of applicable case law does reveal that the Debtors' position does have some support. For example, in *In re Lindamood,* the bankruptcy court for the Western District of Virginia held that the anti-modification clause of § 1322(b)(2) only applies to lenders who make purchase money home mortgages, and not to lenders who acquire security in the debtor's residence to secure other debts. 34 B.R. 330, 331–32 (Bankr. W.D.Va.1983). In addition, in *In re Shaffer,* the bankruptcy court concluded that the protection of a non-purchase money mortgage securing an ordinary consumer debt might be within the letter of § 1322(b)(2), but that such an interpretation would not be within the spirit of the statute. 84 B.R. 63 (Bankr.W.D.Va.1988), *aff'd in part, remanded in part sub nom. Capitol Credit Plan of Tennessee, Inc. v. Shaffer,* 116 B.R. 60 (W.D.Va.1988).

The basis for these decisions rests primarily upon the assumption that only a purchase money mortgage was actually intended to be protected from adjustment when Congress enacted the anti-modification clause of § 1322(b)(2). Nevertheless, the Court finds that this supposition is without merit as § 1322(b)(2) is unambiguous as written, and therefore, adding a condition to § 1322(b)(2), such as the purchase money mortgage requirement, would only be necessary if such a condition were actually needed to make the statute functional, or the lack of such a condition was clearly in contradiction to the intent of the statute. *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982)

("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."). In this case, however, neither of these circumstances are applicable as § 1322(b)(2) is fully functional as written, and, in addition, the lack of a requirement against applying a non-purchase money mortgage to the anti-modification clause of § 1322(b)(2) is not necessarily inconsistent with the statute's intent, which, as described by the Supreme Court in *Nobelman*, was to encourage the free flow of capital into the home lending market. 508 U.S. at 332, 113 S.Ct. at 2111–12 (Stevens, J., concurring).

Two additional considerations further buttress this position: First, the precedential effect of the aforesaid mentioned cases supporting the Debtors' position are highly questionable today given that these decisions were rendered prior to the Supreme Court's ruling in *Nobelman* where the Supreme Court, although not addressing the exact issue raised by the Debtors, specifically held that the bifurcation of a security interest in a debtor's principle place of residence is not permitted in a debtor's Chapter 13 Plan. *See discussion, supra.* Second, a review of applicable case law reveals that the vast majority of cases which have addressed the issue of a purchase money mortgage in relationship to § 1322(b)(2) and § 506(a) have held that the bifurcation of a claim into its secured and unsecured components is not permitted.[1]

■ Thus, given all these considerations, this Court will not read a condition into § 1322(b)(2) which does not actually exist. Consequently, this Court holds that the anti-modification clause of § 1322(b)(2) applies even if the underlying mortgage placed against the residence was not used to secure the purchase price of the property. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

***ORDERED*** that the Debtors' Motion to reduce the mortgage held by Beneficial Mortgage Co. of Ohio be, and is hereby, DENIED.

---

1. *See, e.g., In re French,* 174 B.R. 1, 4 (Bankr. D.Mass.1994) ("reject[ing] the notion that § 1322(b)(2) only protects purchase money mortgages securing the Debtor's principal residence); *In re Diquinzio,* 110 B.R. 628, 629 (Bankr.D.R.I.1990) (the prohibition against modification in § 1322(b)(2) is not limited to long-term purchase money mortgages); *In re*

*Bradshaw,* 56 B.R. 742, 746–47 (S.D.Ohio 1985) (there is no exception in § 1322(b)(2) for non-purchase money mortgages); *In re Hubbard,* 30 B.R. 39, 40 (Bankr.W.D.Mo. 1983) (§ 1322(b)(2) applies even though debt was not incurred to enable the debtors to purchase their residence).