**CAPITOL CREDIT PLAN OF TENNESSEE, INC., Plaintiff,**

v.

**Cynthia Kay SHAFFER, Defendant.**

**Civ. A. Nos. 88–0108–A, 88–0134–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

July 6, 1988.

See also, 4th Cir., 912 F.2d 749.

Charles L. Moffatt, IV, Bristol, Tenn. and A. Carter Magee, Jr., Roanoke, Va., for plaintiff.

Barry L. Proctor, Abingdon, Va., for defendant.

MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This is an appeal pursuant to 28 U.S.C.A. § 158(a) (West 1987) of an Order and Memorandum Opinion of the United States Bankruptcy Court for the Western District of Virginia confirming a Chapter 13 repayment plan.

Cynthia Kay Shaffer filed for bankruptcy under Chapter 13, listing two secured debts amounting to $28,000 on her petition. The first debt was to the Farmers Home Administration (FmHA) and had an outstanding balance of $19,000.00 with monthly payments of $90.00. The second debt was to Capitol Credit Plan of Tennessee, Inc. (Capitol) and had an outstanding balance of $9,000.00 with monthly installment payments of $225.00. The FmHA debt was current but Shaffer was four months in arrears on the Capitol debt. Both were secured by deeds of trust in her home, which she valued at $34,000.00 in her petition. Shaffer also listed other unsecured debts amounting to $5,000.00.

Accompanying her petition was a plan pursuant to 11 U.S.C.A. § 1321 (West 1979) for repaying her debts. Shaffer proposed to repay the FmHA debt according to the terms but wanted to modify the Capitol debt to monthly payments of $124.00 accruing at an eleven (11) percent interest rate, a substantial reduction of almost $100.00 and seven (7) points. Shaffer also proposed to modify the unsecured debts in her plan.

Capitol objected to the modification of the note on the basis of 11 U.S.C.A. § 1322(b)(2) which provides that "the plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." The bankruptcy court approved the plan over Capitol's objection although the note

fell within a literal reading of the statute. *In re Shaffer*, 84 B.R. 63 (Bankr.W.D.Va. 1988). The court read into the statute a requirement that the debt secured by a security interest in the debtor's principal residence be a traditional purchase money mortgage as it has done on two previous occasions. *In re Lindamood*, 34 B.R. 330 (Bankr.W.D.Va.1983); *In re Bruce*, 40 B.R. 884 (Bankr.W.D.Va.1984). Since the Capitol debt was for a relatively short term debt at a high rate of interest and secured by a deed of trust junior to the FmHA lien, the court held it was "exactly the type of consumer loan secured by a security interest in residential real estate that should be denied the protection of Section 1322(b)(2) notwithstanding the fact that the value of the real estate may be high enough to make the debt fully secured." 84 B.R. at 67 (citation omitted). Capitol appeals this decision. Shaffer has not briefed this issue, presumably because of the cost to the estate.

There are two opposite lines of cases interpreting the mystical clause within § 1322(b)(2). Judge Pearson relied on the first line. *E.g., United Companies v. Brantley*, 6 B.R. 178 (Bankr.N.D.Fla.1980); *In re Neal*, 10 B.R. 535 (Bankr.S.D.Ohio 1981); *In re Morphis*, 30 B.R. 589 (Bankr. N.D.Ala.1983). Although the precise facts inevitably diverge in these cases, the analysis is similar. The courts decided the plain intent of the provision was to protect the long-term home mortgage industry by ensuring homeowners repaid their loans to institutions engaged primarily in this line of financing. *E.g. In re Seidel*, 752 F.2d 1382, 1385–87 (9th Cir.1985); *Brantley*, 6 B.R. at 189; *Morphis*, 30 B.R. at 592–93 and n. 2. This industry deserves such protection because of the valuable social service it provides: fulfilling the American dream of owning your own home. *Grubbs v. Houston First American Sav. Ass'n*, 730 F.2d 236, 246 (5th Cir.1984). Reading the provision literally defeats this purpose by extending protection to those not performing the valuable social service. Furthermore, a literal interpretation of the statute gives credence to an economic nullity. Debtors could grant numerous security interests far surpassing the value of the principal residence to enable various consumer financiers to come within the terms of the provision. In an economic sense, the financier had nothing but, in a legal sense, would have a lot, resulting in courts extending protection to a mere paper transaction. Such a result, now in vogue for consumer financiers, *In re Bradshaw*, 56 B.R. 742, 746 (S.D.Ohio 1985); *Morphis*, 30 B.R. at 592, would defeat the whole purpose of a Chapter 13 reorganization by precluding a debtor from modifying any plausibly secured debt. All courts agree the legislative history provides only weak support for their conclusion.

In situations where the junior lienor had an interest in property valued at less than the combination of senior and junior liens, some courts have bolstered their result on the 11 U.S.C.A. § 506(a) distinction between secured and unsecured creditors, holding the junior lienors to be unsecured. Section 1322(b)(2) applies only to secured creditors and therefore is unavailable to the holder of the junior lien. *E.g., Morphis*, 30 B.R. at 594. The bankruptcy court did not rely on this distinction since the combined amounts of the two secured debts ($28,000) is less than the value Shaffer assigned to her house ($34,000) in her Chapter 13 petition.

The contrary line of cases strictly construe the statute, regardless of the effect, leaving reform to Congress and not the courts. *E.g., In re Allen*, 75 B.R. 344, 345–46 (Bankr.S.D.Ohio 1987); *accord In re Hobaica*, 65 B.R. 693, 695–96 (Bankr.N. D.N.Y.1986); *In re Hynson*, 66 B.R. 246 (Bankr.D.N.J.1986). Under this alternative view, Shaffer could not modify the Capitol debt since it is a debt secured only in real property that is the debtor's principal residence. *Bradshaw*, 56 B.R. 742 (identical facts). Were the court to espouse this interpretation, Shaffer's Chapter 13 filing would be futile since the Capitol debt is the only significant debt whose fair modification would enable her to avoid liquidation.

This court believes the bankruptcy court opinion contains a well-reasoned analysis of how § 1322(b)(2) should operate. Although

appellant criticizes reading "purchase money mortgage" in place of the word "only," courts are constantly called on to cure a poorly drafted statute. For example, in *United States v. Scrimgeour*, 636 F.2d 1019 (5th Cir.), *reh'g denied,* 642 F.2d 1210, *cert. denied,* 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981), the court replaced the word "or" with "and" in deciding the conditions precedent for recanting a false declaration before a grand jury or court pursuant to 18 U.S.C.A. § 1623(d) (West 1984). That statute was also clear on its face but was ludicrous if read otherwise. Section 1322(b)(2) presents the same type of problem.

Most courts concluded the legislature provides no direct support for the result but an exhaustive analysis in *Grubbs,* 730 F.2d at 242–46, reveals that the provision resulted from concerns expressed during the hearings by witnesses from the home loan industry. *Id.* at 245 n. 13. Not much thought was given to the provision except for limiting its scope to qualified debts "secured *only* by a security interest in real property that is the debtor's principal residence" (emphasis added) when the original amendment excluded *any* security interests "wholly secured by mortgages on real property." *Id.* Further revision was necessary as this case reveals. Such hasty draftsmanship compels a veritable rewriting of the provision. Therefore, the court agrees that a literal reading of § 1322(b)(2) places the Capitol debt "within the letter of the statute, but not within its spirit, nor within the intention of its makers." 84 B.R. at 66 *citing Church of the Holy Trinity v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). The bankruptcy court may one day be called upon to draw the line of demarcation between a senior purchase money mortgage and a home improvement junior mortgage, but this issue need not detain the court as Capitol does not argue its note, which bears a home improvement logo, Record at 18, bears such a characteristic.

Capitol presents two other reasons why the plan should not be approved. First, the plan should have either (i) required Shaffer to surrender to Capitol the property securing the claim or (ii) allowed Capitol to retain the lien on the residence and provide it with value which is not less than the allowed amount of its claim as provided in 11 U.S.C.A. § 1325(a)(5). Second, the bankruptcy court erred in confirming over Capitol's objection a plan which extends payment of the claim beyond the five-year period permitted under *id.* § 1322(c) because the last payment on Capitol's claim was due prior to the date on which the final payment of the plan is due. The court elects to remand these issues to the bankruptcy court for consideration as the record is devoid of any findings on these aspects of the case and Shaffer cannot afford to defend the decision. Allowing the bankruptcy court to first address these contentions ensures this court will equitably consider the effect of a decision on all parties.

### ORDER

In accordance with a Memorandum Opinion entered this day, the court:

(1) AFFIRMS the bankruptcy court's decision regarding its interpretation of 11 U.S.C.A. § 1322(b)(2) (West 1979);

(2) REMANDS the case for decision on the two reasons why the plan should not be confirmed asserted by the appellant during this appeal;

(3) STRIKES this matter from the docket; and

(4) DIRECTS the Clerk to send certified copies of this Order to counsel of record and to the United States Bankruptcy Court for the Western District of Virginia.