**In re Jeanne T. BOISVERT, Debtor.**

**Bankruptcy No. 93–11884–JNG.**

United States Bankruptcy Court,
D. Massachusetts.

June 30, 1993.

Andrew S. Koczera, New Bedford, MA, for debtor.

Howard D. Seigal, Boston, MA, for Shawmut Bank, N.A.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the objection filed by Shawmut Bank, N.A. ("Shawmut" or the "Bank") to the Debtor's proposed Chapter 13 plan. The issue raised by the objection is whether the exception set forth in 11 U.S.C. § 1322(b)(2) applies to a claim secured only by a security interest in the Debtor's principal residence at the time of filing, but which had been secured by other collateral prior to the filing. Section 1322(b)(2) provides the following:

> (b) Subject to subsections (a) and (b) of this section, the plan may—
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims....

11 U.S.C. § 1322(b)(2).

## II. FACTS

The material facts are undisputed. Jeanne T. Boisvert ("Boisvert" or the "Debtor") filed a petition under Chapter 13 of the Bankruptcy Code on March 1, 1993. At the commencement of her case, Quincy Savings Bank and Shawmut held claims secured only by security interests in the Debtor's principal residence located at 652 Washington Street, Abington, Massachusetts.

The Debtor's obligation to Shawmut is evidenced by a promissory note in the original principal amount of $147,705.44, which was signed by the Debtor and two siblings, David L. Boisvert and Catherine M. Boisvert. This obligation originally was secured by mortgages on three properties owned jointly by the Debtor and her brother and sister: 265 Tarkiln Hill Road, New Bedford, Massachusetts, 271 Tarkiln Hill Road, New Bedford, and 652 Washington Street, Abington. In May of 1992, the Debtor and her siblings sold the property located at 265 Tarkiln Hill Road, and the Bank released its mortgage on the property in exchange for the net proceeds from the sale. Similarly, in July of 1992, the 271 Tarkiln Hill Road property was sold, and the Bank released its mortgage in exchange for the net proceeds from the sale. Accordingly, in March of 1993, when the Debtor filed for Chapter 13 relief, the Bank's claim was secured only by a security interest in the Debtor's principal residence.

The Debtor filed a Chapter 13 plan on March 29, 1993. In her plan she divided Shawmut's claim into secured and unsecured portions. She proposed to pay the secured portion of the loan directly to Shawmut in monthly installments of $900 and to pay the unsecured portion a 10% dividend in monthly installments over the life of the plan. Shawmut filed an objection to the plan on April 28, 1993.

## III. DISCUSSION

The Bank, relying upon the recent United States Supreme Court case of *Nobelman v. Amer. Sav. Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (hereinafter *Nobelman*), argues that the collateral securing an obligation should be evaluated as of the date of the bankruptcy petition, and, since its obligation is secured only by the Debtor's principal residence, the Debtor may not bifurcate the obligation into secured and unsecured portions and treat each differently.

The Debtor argues that the exception set forth in section 1322(b)(2) is inapplicable. She relies upon the legislative history of section 1322(b)(2) and the position of several courts that have held that

> the plain intent of the exception is to provide ... stability in the residential longterm home financing industry and market ... [and] ... to specifically protect institutional lenders engaged only in providing long-term home mortgage financing and not lenders primarily engaged in consumer or other areas of financing but who takes security inter-

ests in a residence or homestead to secure non-possessory home financing debts.

*United Companies Financial Corp. v. Brantley (In re Brantley)*, 6 B.R. 178, 189 (Bankr.N.D.Fla.1980). *See also Nobelman*, —— U.S. at ——, 113 S.Ct. at 2110–11, *citing, Grubbs v. Houston First Amer. Sav. Ass'n*, 730 F.2d 236, 245–46 (5th Cir. 1984).

■ The Court sustains the Bank's objection for two reasons. First, the language of section 1322(b)(2) is unambiguous and, therefore, the legislative history cannot be used to depart from its plain meaning to include nonpossessory or short term mortgages within the exception. *See In re Braylock*, 120 B.R. 61 (Bankr.N.D.Miss. 1990) (nothing in section 1322(b)(2) suggests that it is "designed for a particular type of loan."); *In re Marrero*, 111 B.R. 384 (Bankr.D.P.R.1990) (section 1322(b)(2) applies to home mortgages whether they are short or long-term and not purchase money); *In re Diquinzio*, 110 B.R. 628 (Bankr.D.R.I.1990) (the prohibition against modification in section 1322(b)(2) is not limited to long-term, purchase money residential mortgages), *contra, In re Williams*, 109 B.R. 36 (Bankr.E.D.N.Y.1989) (section 1322(b)(2) is intended to protect only long-term residential home mortgages); *In re Shaffer*, 84 B.R. 63 (Bankr.W.D.Va.), *aff'd in part sub nom, Capital Credit Plan, Inc. v. Shaffer*, 116 B.R. 60 (W.D.Va.1988) (section 1322(b)(2) does not protect a junior short-term lien from modification).

■ Secondly, the extent of a creditor's collateral should be evaluated at the commencement of the case. In *In re Amerson*, 143 B.R. 413 (Bankr.S.D.Miss.1992), the court considered the identical issue raised by Shawmut's objection to confirmation of the Debtor's plan. Citing 11 U.S.C. § 502,[1] it held that "the crucial time for determination as to whether a creditor is entitled to invoke the protected status of a creditor secured only in residential real estate is the time of the filing of the petition." *Id.* at 414, *quoting, In re Green*, 7 B.R. 8, 9 (Bankr.S.D.Ohio 1980). Likewise, in *Matter of Graham*, 144 B.R. 80 (Bankr. N.D.Ind.1992), the court stated that "[t]he only relevant inquiry was whether '[a]t the time of the debtor's filing under Chapter 13, [the creditor] held a valid perfected security interest in the [other collateral],'" *quoting, In re Dent*, 130 B.R. 623, 630 (Bankr.S.D.Ga.1991).[2] *See also In re Ivey*, 13 B.R. 27 (Bankr.W.D.N.C.1981).

## IV. CONCLUSION

■ In accordance with the foregoing, the Court sustains Shawmut's objection to the Debtor's Chapter 13 plan. As a creditor with a claim secured only by a security interest in the Debtor's principal residence, Shawmut is afforded the protections of 11 U.S.C. § 1322(b)(2), and, pursuant to the recent Supreme Court decision in *Nobelman*, the Debtor is precluded from bifurcating Shawmut's claim into secured and unsecured portions.

---

1. Section 502 provides in relevant part:
    (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.
    (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount. ...

11 U.S.C. § 502.

2. Courts distinguish between the pre- and post-petition release of additional collateral. For example, in *In re Baksa*, 5 B.R. 184 (Bankr. N.D.Ohio 1980), the court refused to award a creditor the protection of section 1322(b)(2) in light of the creditor's lack of good faith in attempting to release nonresidential security post-petition. *See also In re Dent*, 130 B.R. at 630; *In re Graham*, 144 B.R. at 84.